<hr/>

JACKSON, *ex dem.* HARDENBERGH, *against* SCHOON-
MAKER.

Where a grant of land, made in 1717, mentioned a "*running stream of water*," as one of the boundaries; and no actual location of the premises was made by the grantee or his heirs; the court refused, after the lapse of near a century, to extend a description, vague and uncertain, from a running stream which would take in the least, to a running stream which would include the greatest portion of land, so as to disturb ancient possessions between the two streams. Every presumption, after such a lapse of time, is to be taken against a party, who neglects to have his land surveyed, and its boundaries accurately defined, or to reduce them into actual location, at the time; and the description in his deed will be construed, so as to reduce his grant to the narrowest limits.

THIS was an action of ejectment, for land, in the town of *Rochester*, in the county of *Ulster*, and was tried at the *Ulster* circuit, in *September*, 1809, before the *Chief Justice*, and a struck jury.

NEW-YORK,
Nov. 1810.

JACKSON
v.
SCHOONMA-
KER.

The controversy, relative to the premises in question, has been several times before the court, and various questions decided. [See 2 *Johns. Rep.* 230. 4 *Johns. Rep.* 161. 390.] The single point now decided, related to the location of the deeds under which the plaintiff claimed; and it is unnecessary to detail the evidence given at the trial, as it could not be understood, without a reference to the maps and surveys.

The plaintiff deduced his title from the patent of *Rochester*, in 1763, to the trustees of *Rochester*. In 1717, *Jacob Dewitt* and others, trustees of *Rochester*, conveyed to *L. Cole*, senior, a piece of land described as follows : "All that certain piece or parcel of land, lying and being at *Rochester*, beginning on the south side of *Rondout Kill*, over the *Stoney Kill*, owned by the name of *Cripple Bos*, lying on the west side of *Harman Hendrickson Rosekran's* land, beginning on the south side of the *Stoney Kill*, by the mouth of a *running water*, where it runs into the *Stoney Kill*, and so along the outside of the *running water*, to the *Indian marked tree*, standing on the south-west side of the said run of water; from thence all along the outside of the aforesaid run of water, against the south-west bounds of *David Dubois*; and from thence north to his south-west corner, and all along his bounds to the bounds of *Leonard Cole*, senior, and from thence all along his bounds against the first station, and from thence straight over the first station, from whence it begins." This deed was acknowledged, the 12th of *November*, 1751, by *Jacob Dewitt*, one of the grantors, who proved that the other two grantors, who were then dead, had also executed the deed.

The deed from *Leonard Cole*, son and heir of *Leonard Cole*, senior, to *Jehosaphat Dubois*, was dated the 30th of *October*, 1751, and was acknowledged the 11th of *November*, 1751. It contained the same description as that in the deed of 1717.

The question now raised, was as to the true location of the premises, described in these deeds; or the true meaning and construction thereof.

The cause was argued by *Tallmadge* and *Sudam*, for the plaintiff, and *E. Williams* and *Rudd*, for the defendant.

KENT, Ch. J. delivered the opinion of the court. This cause is submitted to the court, upon the legal operation and true construction or location of *Cole's* deeds, of 1717 and 1751. The claim, under these deeds, has been several times before the court; but this is the first time that the cause has turned upon their location.

The question is, what stream was meant by the *running water*, in *Cole's* deed? Was it the stream now called the *Sander's Kill*, or the stream now called the *Mill Creek?*

It ought to be recollected, that we are inquiring into the meaning of a description of a piece of land, which was granted as early as 1717. *Coles*, the grantee, does not appear to have ever reduced the bounds of his grant to actual location. The deed slept quietly, from the time it was given, for 34 years, until the year 1751, when it was acknowledged and recorded; and the son and heir of *Coles* sold the land by the same description given in his father's deed. No actual location was made of the grant in the life-time of *Dubois*, though he lived six years after the date of his deed; and, now, after the lapse of near a century, his representatives call upon the court to carry a description vague in itself, and rendered extremely so by time, from a running stream which would take in the least, to a running stream which would take in the greatest portion of land; and this at the expense of very long and ancient settlements, between the two streams. In a case of such antiquity, every presumption should be turned against the party who neglected, at the time, to have the land surveyed, and accurately defined,

or to reduce it to actual location, when the common parlance of the country was well understood, and monuments were fresh and notorious. This principle is, of itself, sufficient to decide this cause against the plaintiff; for it must be admitted, that nothing can be more difficult than to endeavour to find out, at this day, what and where were the *Cripple Bos*, the *running water*, and the *Indian marked tree*, mentioned in the deed of 1717. If there be two running streams which will each of them tolerably well answer to the description in the deed, the plaintiff ought *now* to be confined to that which will reduce his grant to the narrowest limits. His grant was likewise to be located on the west side of *Harman Henderson Rosekran's* land. This alludes to *Rosekran's* land, as a matter of claim and possession; and if the patent to *Beekman* and *Hendricks*, in 1680, was never granted upon actual survey, but by vague and indefinite terms, and the claimants under that patent, did, for a period, as far back, at least, as the memory of witnesses can reach, extend their possessions east of *Sander's Kill*, the grant to *Coles* must lie west of those possessions.

But if we were now to search for the monuments and bounds of *Cole's* deeds, the weight of testimony is greatly in favour of the *Mill Brook* being the *running water*, mentioned in the deeds. In addition to the force of a number of circumstances which need not now be detailed, there were four surveyors examined upon the trial, as witnesses, and three of them locate the deeds upon that brook, as best corresponding with the description in the deeds, and the actual view and state of the premises; and the other surveyor admits, that if *Rosekran's* land did, in fact, extend west of the *Sander's Kill*, as was shown on the part of the defendant, he should also concur in the location contended for by the defendant.

NEW-YORK,
Nov. 1810.

JACKSON
v.
SCHOONMAKER.

For these reasons, judgment ought to be rendered for the defendant.

Judgment for the defendant.